Ms. Pickett, whenever you're ready. May it please the Court, good morning. My name is Katie Pickett and I'm here on behalf of Appellant Amec Foster Wheeler. As the Court is aware, this case involves repairs to the historic Alcatraz Citadel, where the government issued a unilateral modification that greatly expanded the scope of work to the BNC cell blocks of the Citadel. Although many issues were tried before the Board, Amec presents four issues on appeal and those are the issues I'd like to address, but I'm happy to focus on any particular issue that the Court wishes. The first issue on appeal is the Board's denial of Amec's general conditions costs for 117 days that the Board found were compensable. We submit that this was legal error because the Board erroneously rejected Amec's experts' methodology. We also submit that this is unsupported by substantial evidence because the government admitted Amec's general conditions costs were at least approximately $1,500 a day. So you may check. This is Judge... Go ahead. Sorry, this is Judge Hughes. Do you agree that actual cost is preferable and you have to justify using something other than actual cost? I agree that the case law holds, generally speaking, that for an equitable adjustment that actual costs are the preferred method. Here we submitted the actual labor hours, but we used the parties' agreed-to contractual rates, which were the fully loaded rates, for those labor costs. Well, are those actual costs to you or are those something else? They are not the actual costs to us. So how is it legal error for the Board to disregard your experts' testimony if they're not actual costs? I don't think any of the cases that the Board cited or that the government cited hold that relying on the parties' contractual rates for the general conditions costs is inappropriate. And in fact... Well, I thought you had agreed that the precedent generally required actual costs unless you had some kind of justification that you couldn't approve actual costs. And I didn't see anything in the record that suggested you couldn't approve actual costs or you didn't seem to argue you couldn't. So I'm just curious as to why you didn't just submit records to show what the actual costs were here instead of using these contractual labor rates. Your Honor, Amex felt that using the contractual labor rates was a fair method to determine what the general conditions costs were. And in the Wilner case decided by the claims court, the court there used the hourly rates provided for in the contract. And the court also noted there that when the contractor's methodology is generally sound, but there's a problem with the application of the methodology because some aspect of it is faulty, disallowing recovery for the entire item is draconian. And that is what the Board did here. It disallowed any recovery despite the fact that the government's expert told the Board that... Well, I think you're pivoting to a second question. I was still trying to figure out whether you thought actual... You provided actual costs and it doesn't seem like you did. And it doesn't seem like you tried to justify that this was the best method you could do. You just gave this method. So if you want to talk about the government's estimate, you can. You know, I agree it's draconian not to give you any recovery, but if there's no proof of actual costs, then isn't that the result? No, Your Honor. I don't believe that that's the result. Well, what would the Board do if all it... Let's take hypothetically, we don't have the government's opinion out here. All we have is your expert opinion. And the Board judge properly determines that your methodology is just impermissible. So he rejects it as unreliable. There is no proof. So what would he do to award you costs? Well, what the Board has done in the past in the Yates versus Decide-Build case was to award the liquidated damages rate as a fair rate. And in this case... Did you ask for that? No, Your Honor. Well, how can the Board do that if you didn't ask for it? I don't believe... Did you... I want to get to the government's issue now. Did the government... In your view, did you ask for the government's rate as an alternative? No, Your Honor. We did not. Okay. And I want to look a little bit more in detail at actually what the expert was doing there because it's not clear to me, and maybe the government can answer this also, that the government's expert is saying what the actual costs are based on an actual cost methodology or just poking holes in your methodology and saying even under that, it would be reduced to the 1546 rate. Do you have an opinion as to what that government's expert was doing? Yes, Your Honor. And I would direct or suggest that the court examine Appendix 15669, page 1468, lines 3 through 10 of the testimony. There the government's expert testified to the Board, quote, the way I had done my calculations was exactly consistent of the judge's description of how it should be done, which was we determined the actual cost per people and apply the actual, you know, overhead rate. Well, so that's... I get that. This is what's confusing to me because I see that in the testimony, but then I look at that if I can direct you to 14554, which is the government's expert report. Yes, Your Honor. And under 7.7, I think this is the government's expert report. Correct me if I'm wrong. It's AMEC Extended General Conditions and it's the government's response to that. And then it notes that you seek it for 1968 days and then it has further issues with that. And then at the end of that first paragraph, it says even adjusting for these estimated amounts, blah, blah, blah, it says an adjusted daily rate would be approximately 1546. So in the report, it sounds like he's just adjusting your methodology, not going to actual cost. Am I missing something? Is there another government expert that actually relies on actual cost? No, Your Honor. And I mean, I agree with you that the report does not seem strictly consistent with how the government's expert testified to the board. But the fact remains that the government's expert told the board that it had applied the methodology that the board was seeking and that that was... Well, if there's conflicting evidence in terms of the expert report and the testimony, isn't it up to the board to determine what kind of fact-finding they make upon this? I mean, if it was an admission, I have no doubt, if the expert report said, we did it the right way, we did it on actual cost and looked at their records and it's 1546, and that testimony was then repeated to the board and the board said, yeah, or the government said, yeah, they're entitled to 1546, that seems like an admission. But when we have two conflicting pieces of evidence and we don't see any sense that the government has admitted that you're entitled to 1546, how are we to substitute our fact-finding for the board on this? Well, the government, I believe, did admit this was the appropriate rate. If the government's post-trial or post-hearing brief, Appendix 17726, the government states it doesn't believe that AMAC is entitled to any days of compensable delay. However, to the extent the board disagrees and awards AMAC days of compensable delay, which it did, it awarded 117 days, the NPS believes the appropriate daily rate to be applied for general conditions is 1546. I mean, I would submit that that's an admission on the government's part that they owe at least 1546 if compensable days are awarded. And they were awarded, and nonetheless, the board awarded zero. What if that admission is based upon not actual cost? I mean, I still think that it sets a floor for how much AMAC would be entitled to for general conditions. I mean, if the government says, if it's compensable, then here's how much is owed, then the government should be bound by that. I mean, both parties tried the case assuming, essentially, that that's the floor. And then to come up with zero, as I stated before, is a draconian result. So unless the court has any more questions on the first issue, I'd like to move to the second issue with the court's permission. For the second issue on appeal, the board awarded no time to perform Modification 1. What it awarded, those 117 days of compensable delay, that was the period running from when this major structural issue was discovered on site up till the point when the board found that work could begin, but it awarded no days whatsoever to actually do the expanded scope of work. And the board found that the agency's expert's estimation of 90 days wasn't a weighty admission because the agency's expert said, well, those days aren't compensable. But the agency's expert said those 90 days are excusable, in other words, concurrent delays. And the board didn't address that or reduce the liquidated damages award by those 90 days. And so, again, what we have is an agency admission that the board didn't take into consideration or didn't fully explain its reasoning for, and we would submit that that is arbitrary and capricious and not supported by substantial evidence. I see that my time is running short and that I'm about to get into my rebuttal time. So... You called it correctly. Why don't we hear from the other side, and they'll reserve your rebuttal time. Thank you. Mr. Byrd. Good morning, Your Honor, and may it please the Court. This is a simple failure of proof case. In this appeal, Anne seeks a second bite at the apple by selectively appealing only a These are not legal conclusions on appeal here. Can I direct you to the argument? This is Judge Hughes. To the argument that the government in its post-trial brief made an admission of the 1546, even with the conflicting evidence. Why isn't it the government, you know, puts in its post-trial brief and says, well, you shouldn't get the full amount, but the appropriate rate, if you give delay at all, is 1546. Why isn't that an admission against interest that should be held against you? Your Honor, to Your Honor's, I guess, pre-deceded point, the agency's expert calculation in the case, which is best explained at Appendix 14554 in the agency's... No, no, no. I get this. I think the expert did not do an actual... Your expert did not do an actual cost adjustment, and that 1546 wouldn't be a factual, reliable factual evidence for actual cost. But nonetheless, in your post-trial brief, you apparently, according to your friend on the other side, agreed to the 1546. Even if that's not a correct number, if you agreed to it, why aren't you held to that? Well, again, Your Honor, there's no evidence in the case that AMAC had an inability reasonably to prove its... No, you're not answering my question. You're not answering my question at all. I understand AMAC didn't meet its burden of proof. Your expert's report doesn't supply an alternative basis on that. But nonetheless, if you put in a post-trial brief, a number, wherever that number comes from, and says this is the number they're entitled to, why isn't that number in admission? Additionally, Your Honor, in the briefing before the board, the agency consistently contended that AMAC was not entitled to any time-related information. I'm going to give you one more try to see if you're going to answer my question. If you're not, we'll just, you know, stop wasting my time, and we can move on. I understand all of that. The point is, if in your post-trial briefing you say, we disagree with all of their arguments, they didn't prove actual costs, they shouldn't get any money at all, blah, blah, blah. But if you disagree with us on the compensation for days of delay, here is the dollar amount they should get per day. If you said that in your brief, why shouldn't you be held to that? Your Honor, that's not an admission, and that the government did not say that AMAC was entitled to that amount, necessarily. The government said, the agency said, that if the board concluded there was compensable delay, that was a more reasonable approximation of AMAC's cost. However, at base, that calculation was still not AMAC's actual cost, and faced with a failure of proving it, and a reasonable ability to prove that cost. So, are you saying it doesn't meet the legal standard for the admission against interest? And if so, what's that standard, and why doesn't it meet it? Well, it is not an unqualified statement of the agency that this is the actual extended general conditions cost that's experienced by the contractor in this case, and therefore, without any qualifications, we agree that this is the rate that they should be entitled to recover for each day of extended general conditions during the period of compensable delay. Mr. Burns, shouldn't we just be looking at the actual words to decide whether this is an admission? If you look at page 17, 726, the sentence says, if the board awards AMAC delays, days for compensable delay, the NPS believes the appropriate daily rate to be applied for general conditions is 1546. No, Your Honor, because that statement is against a legal backdrop that requires the contractor to prove a reasonable inability to establish cost based on actual cost before the board would resort to awarding the contractor using evidence of cost that are less than actual cost, so no. I don't see how you can read that end of that sentence. Sorry, this is Judge Hughes again. It's your point that in the context, this is in the context, there's already been a discussion about whether schedule should apply at all, and so there's been a whole question about cost, actual cost, and nonetheless, there's this flat statement. Let me put it to you this way. If we were to decide this is an admission, is there any reason why the government should not be held to an admission? If the court were to decide that this is an admission of a more reasonable approximation of AMEX extended general conditions cost, that still doesn't meet the standard for awarding AMEX cost during the compensable period of delay when the record otherwise establishes that AMEX failed to prove that it could not reasonably have shown the board reliably and the reasonableness of its actual cost experience during that compensable delay period. So, this is Judge Hughes again. It's your point on this, even though it's not really clearly worded, that to the extent this is an admission, it's an admission that if the board uses AMEX methodology, there still needs to be an adjustment and it should use 1546 rather than the 1900 number under AMEX contractual methodology, but it doesn't admit anything about actual cost. That is correct, Your Honor, and we do demonstrate in our response brief in this case that essentially what the agency's expert did to the daily rate AMEX expert had calculated was to back out aspects of that rate that AMEX expert had calculated that should not have been in there. The primary example of that is home office overhead, which is not an element of extended general conditions because as opposed to home office overhead, extended general conditions are site supervision costs, not the cost of the home office. So, the agency's expert at base simply backed out that component of that daily rate that AMEX expert had calculated to get a potentially more reasonable approximation of AMEX actual cost experience if the board awarded the cost using the method that AMEX expert had calculated. Turning to the second issue in the case, the Modification 1, regarding time, AMEX does not contest the board's conclusion that Modification 1 entitled AMEX to an extension for the time to perform it not attributable to AMEX fault. AMEX instead contests the board's factual finding that could see no basis in the record to determine how long that modification should have taken to perform. Substantial evidence supports the board's finding there that AMEX had failed to prove how long it reasonably should have taken AMEX to perform the modification. Primarily, we demonstrate this in our brief response pages 32 through 36. Regarding additional compensation for the modification, substantial evidence also supports the board's finding that AMEX failed to prove that it incurred costs while performing this modification, approximately $300,000. Primarily, the dispute on appeal with regard to compensation boils down to the final period of performance of the contract where the substantial evidence in the record establishes that AMEX needed to segregate costs during that period because it was performing both modified and base scope of work. Lastly, to finish on the preparation cost for AMEX request for equitable adjustment, as the board recognized, AMEX may have been able to recover costs for that REA preparation and contract administration. However, substantial evidence supports the board's finding that AMEX failed to prove that its claimed costs were recoverable because it did not prove that it incurred costs for the genuine purpose of materially advancing negotiations with the government. As the board found, AMEX failed to detail why these costs were incurred, stating only that its experts, again, had allocated the requested amount to Modification 1. And again, at base, the case really does come down to AMEX failure to prove the amount that it was entitled to during its work on the construction project. And if there are no further questions from the court, we respectfully request that the court affirm CBCA's decision. Thank you. Thank you. Ms. Tickett, you've got three minutes left. Thank you, Your Honor. I just want to briefly address some of the points that counsel opposite raised. On the request for equitable adjustment costs, in the brief, the government argues that negotiations had ceased and that that's a reason why the court should affirm the board's determination that this was not for the purpose of negotiating or contract administration, but instead for prosecuting a claim. And we point to record evidence that the board had before it. The government continued to ask for information as part of negotiations through August of 2014. The board also had before it the invoices from AMEX third-party contractors, its attorneys, and its consultants that it utilized in preparing the request for equitable adjustment. And those invoices have descriptions of the work done and numerous, I mean, many, many of those descriptions state prepare REA, phone conference on REA, strategy for REA. The descriptions in the invoices themselves speak to the purpose of why those costs were being incurred. And the board relied heavily on the fact that some of those descriptions were redacted. However, the board didn't cite any law, and I've been unable to find any law, that the fact of redaction is enough to overcome the strong presumption that these costs were incurred for a legitimate purpose and of negotiation and not for the purpose of prosecuting the claim. And on that point, we ask that the court reverse the command and on the other issues as well. And again, I see that my time is about to expire. I do want to leave a moment to answer any questions that the court may have. Hearing none, thank you, Ms. Pickett. We thank both sides, and the case is submitted. Thank you very much, Your Honor.